Wal-Mart Stores, Inc. 516-0500 Council for Appellants, you may proceed. Good morning. May it please the Court. My name is Erin Phillips, and I am an attorney from Unseld, Shatnick & Phillips, P.C. And I am here on behalf of Appellant Carol LaVar in this matter this morning, who is also the plaintiff in the underlying cause of action. The issues presented on this appeal are fairly narrow in nature. This case arises out of personal injuries that were sustained by my client, Carol LaVar, in an altercation that occurred on the property of Granite City Wal-Mart parking lot on December 24, 2014, Christmas Eve, going into the evening hours, close to the time that the store was going to close. We are here today to ask the panel to consider to reverse the trial court's grant of summary judgment in the case below. The grant of summary judgment in favor of the defendants was granted on the basis that Wal-Mart and the store manager, defendant Anita McIntyre, did not have a duty to warn or guard against third-party criminal acts. That was the finding of the trial court, that there was insufficient evidence brought forth by a plaintiff in that matter to show that there was notice on the part of the defendant supposed to create a duty. And one of the big focuses here, and the focuses of much of the law that's been reported and cited by the parties, has to do with the restatement second of torts, section 344, and comment F. And 344 is important to this circumstance because it focuses on the relationship where possessors of land hold their property open for business purposes. In a moment, I'll turn to discussing the fact that that is one of the main elements here, is that, of course, there was the existence of a business and by-tort and by-teat relationship. Briefly, as I indicated, the underlying facts have to do with my plaintiff going to shop on Christmas Eve. She had left trying to find a particular gift. She ended up at the Granite City Wal-Mart parking lot. She goes into the facility to go inside to shop, realizes that she's lost her shopping list, that she doesn't have it with her, so she goes back out to the parking lot. When she goes back out to the parking lot, she is attacked by an unknown assailant who tries to take her purse from her. She fights back and is injured as a result of that. She ultimately receives some treatment, which kind of goes beyond the scope of where we're at today. In the underlying case, though, the facts that were developed were developed partly through a subpoena that was issued to the Granite City Police Department to determine the number of criminal activities that had occurred at that parking lot in the three-year period prior to Christmas Eve, December of 2014, so the calendar years of 2012, 13, and 14. Those police reports have been included in your appendix to the brief. They begin at page 843. And they show that during that three-year period, there were approximately 18 different situations that were reported that included varying degrees of assaults. In particular, there were three reports, including robberies involving purses being stolen, two of which were stolen from the person of the actual body of the person who was holding the purse. And those occurred during March, July, and October of 2013. Now, the reason why I place so much focus upon those particular incidents was when the matter proceeded forward on defendant's motion for summary judgment to the trial court, the trial court placed much focus and much question upon those particular criminal reports. It was a question initially on the original hearing on the motion for summary judgment as to the nature of all of those incidents, and then narrowed down to the number of incidents that particularly included thefts of purses, and then a question went so far as to say from the actual person where violence was involved. Initially, at the original summary judgment hearing, I must be honest and say that I misspoke and said that none of them involved violence prior to this particular altercation in December of 2014. However, there was then a motion to reconsider filed, and it was brought to light that, in fact, there were three purse snatchings, two from the individual person, and the motion to reconsider was denied, which brings us forward here today. So, again, we know that when we look at the creation of a duty, that generally the rule is that there's not a duty to guard against third-party criminal acts, but there is an exception. And that exception, again, goes back to Section 344 of the Restatement of Torts, and it's been outlined by our Illinois Supreme Court in Roe v. State v. Lombard, and a number of cases thereafter that have acknowledged that this exception exists. And the first portion that we have to look at for that exception is the existence of a special relationship. Again, here, there really has been no dispute that the plaintiff appellant was a business invitee on the property of Walmart for the purpose of finishing Christmas shopping, that there was the relationship of business invitee or invitee. It was during the normal business hours. So that element has been satisfied here. We then turn to the second question, and really the crux of the issue here is this question of foreseeability. A number of cases, again, have discussed what is the standard for foreseeability? What does the plaintiff have to bring forward to show foreseeability that the defendants might anticipate these criminal acts? And this is where I think it's interesting to note that Comment F to Section 344, which I believe is also cited in our original brief, has a particular explanation that talks about that, and I'm quoting here, if the place or character of his business or his past experience is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it and to provide a reasonably sufficient number of servants to afford a reasonable protection. And again, that's Comment F to Section 344 that's been adopted in various cases throughout the state of Illinois. This becomes relevant in this particular circumstance because, as we've talked about, the plaintiff produced the evidence of the prior criminal acts in the form of the various criminal reports, but also other evidence was brought forward prior to the time of the summary judgment. Depositions were taken, not only of the plaintiff, but also of Anitra McIntyre, who is the store manager of the Granite City Walmart location, as well as Scott Botran, who was the manager of asset protection. And what was developed and submitted to the trial court was the fact that Walmart had, in fact, taken certain steps to protect certain areas of the property. Again, coming back to Comment F, when you're looking at a particular time, you have to take that into consideration. And because it was the Christmas holiday season, we know that at various times security was increased inside the store. Sometimes the store went so far as to hire additional outside law enforcement officers to be present at the store. Interestingly enough, because Christmas Eve the store was going to be closing, the store actually had secured outside security who was going to be present and remain in the particular parking lot once the store had closed. So to protect the parking lot and the store during the time that the store was actually going to fully shut for the holiday season. And the reason why all of these elements are relevant to the court's consideration of foreseeability is because this was not an act that occurred not at a time where they might anticipate such criminal acts. The testimony of Mr. Botran, as well as Anitra McIntyre, said that they took these steps during the holiday season because Walmart, as well as other retailers, know that there's increased persons on the property, there's increased amounts of money, there's increased assets and merchandise that they're seeking to protect, that they know that there's an increased risk of theft during that time frame. And that was their explanation for the fact as to why they had taken these additional steps. Additionally, they were aware that there was just a high volume during this Christmas season. They had some authority, interestingly enough, to do things at one store that might be a bit different than another store based upon the volume. And so that was taken into consideration here. Those elements all go to this question of the foreseeability. Between the combination of the prior incidents being of a similar nature, as well as the actions taken by the defendants to secure portions of their property, but no actions to secure the parking lot area where their customers, their business invitees, were being asked to come or invited to come so that they could make these purchases. Again, also, we're talking Christmas Eve. This is right before the store was going to close, right at the time of the expected or anticipated last-minute shopping that folks were doing during that time frame. The particular issue that the plaintiff has taken on this appeal with the court's ruling below was the narrow view that the trial court took to what would be required of the prior criminal acts to be sufficient notice. It seemed to me that the trial court was potentially taking the standard announced in Roe, and there's another case, Vaughn v. Granite City Steel, that's been in this district since 1991, here in the 5th District. Osborne v. Stages Nightclub, which is a 1st District case that looks at these types of elements, where they said, well, the court's there, so what would be sufficient to be prior notice? In both Roe, the Illinois Supreme Court case, and Vaughn, the 5th District case, the court looked at the fact that even property crimes that didn't involve any nature of violence could be sufficient to put the defendants on notice to create this duty. Here, we actually have both. We have evidence of some property crimes, but again, we also have evidence of, in particular, batteries, assaults, three purse snatchings, two of which were taken from the bodies of the victims, so where we went all the way to the element of maybe exactly the same. And that was the concern, was that the trial court seemed to be elevating that standard from similar criminal acts to the exact same criminal act, and that's not what the Illinois Supreme Court has said is the standard for this determination as to whether or not there was a duty which existed. Again, it is the plaintiff or appellant's position here that, in light of the prior criminal acts, as well as the surrounding circumstances that can be taken into consideration under Comment F of Section 344, that the plaintiff met the duty or met its obligation to establish that there was a duty. And truly, that was where the analysis at the trial court stopped. We did not move into a further argument as to any other basis for summary judgment, and the orders below that have been included in the appendix indicate that, that the trial court's specific finding was no duty, and the discussion that surrounded that was there was no duty because it was not foreseeable, and we would ask the court to reverse that determination based upon the foregoing information. Finally, the appellant also acknowledges that, as part of that foreseeability analysis, we do know that the court has to take into consideration the magnitude of the burden versus the benefit to be achieved, that that is a weighing that the court has to undertake. Again, here it is the appellant's position that the burden is not so large as to outweigh the need for some reasonable actions given the particular circumstances of this day in question, this particular time frame. Again, focusing on the fact that we're dealing with Christmas Eve during the holiday season when some other actions had already been taken to increase the security provided within the store, potentially outside the store, but not during this particular time. So, essentially, that the burden is not greatly increased because you would be simply placing upon the defendants a burden to extend the security provisions that they were already taking inside the store to the outside of the store in the parking lot, potentially to have had a guard in the parking lot earlier that day because we know a guard was in the parking lot later that day. Again, very limited and narrow looking to the particular facts and circumstances of this occasion on Christmas Eve of 2014. The appellees in this case, and I will obviously defer and give them time to make their argument in a moment, talk much about saying that we have not met the sufficiency standards, saying that the evidence of the prior criminal acts is not sufficient. Again, I'll reserve some of this for what I anticipate will be rebuttal, but I would ask the court to consider that a number of the cases that are cited by the appellees for that proposition involve situations where they were entirely different prior criminal acts as to what the injured party was seeking. For example, in the Samir case, you had a stabbing that occurred to give notice, but it was only five minutes before. That's not what we're dealing with here. In the Taylor v. Hocker case, we had two women who had been stabbed and attacked, but the only evidence of prior crimes was shoplifting. Again, it's the appellant's request that the court focus on the nature of the particular prior criminal acts here being very similar in nature to the particular criminal act that caused her injury. And with that, I'll conclude for now. Thank you. Thank you. You'll have an opportunity for rebuttal. Appellee. May it please the Court. Counsel. My name is Darrell Hosner. I represent the defendants in this case. Briefly, I'd like to address just a couple quick factual issues that were brought up that I don't think have really much weight as to the appeal, but I just want to address them here briefly. One is this indication that there was some notice on the part of the defendants here that because this was the holiday shopping season, there was an increased risk of harm to customers. There is simply no evidence in this case that that is the fact. There's 18 reported incidents or calls to the police. I point out that these are reports, not convictions of crimes. However, even taking these 18 in consideration, none of them occurred during the holiday shopping season, which is actually quite remarkable. Why do you say it's quite remarkable? Because you would expect them to? Well, you just think if they're kind of randomly distributed, it looks like on the list, and taking two months out of the year, we don't find any during those two months in three years before. So even though you have crimes that are in March in the spring, in the winter, in the fall, you don't have any in this period. And so the allegation that's being made by plaintiff is because we have a holiday shopping season, we would presumably have more people in there for an increased risk. But the facts themselves don't point to that. They don't show that an increase in shoppers, at least for this particular store, caused an increase in risk of harm to customers at the store. But there was apparently determined by Walmart that there was going to be an increased need for security? There was testimony by Scott Botran, who's the asset protection manager of the store, and he testified their job is to protect the assets of the store. Makes sense. Name of the department. So they're focused on shoplifting, essentially. So there may be a belief that there's going to be increased shoplifting during a holiday season? He actually testified in his deposition that shoplifters don't care if they'll shoplift at any time of the year. He said sometimes they'll have increased personnel because of more people in the store, therefore more potential people to monitor, but not because there's some increased risk to customers. And importantly here, the risk that he talks about in his deposition is not a risk of harm to attacks on customers. It's risk of shoplifting due to the number of people in the store. So while even he and the reports of the police don't point to any increased risk even in shoplifting at the time, there certainly is no evidence that, or any evidence to support that Walmart was unnoticed, that there was an increased risk of two shoppers in the parking lot to a violent attack. When we narrow down the list of 18, there's several reported incidents that just have no applicability to this case. For instance, disputes between an employee of the store and a manager about being fired. A domestic dispute or argument in a parking lot, and when the police show up, they say, no, we were just joking around. There are three reported purse snatchings, and all three of those occur more than a year prior to a plaintiff's incident. Again, none of them occur during the holiday shopping season. And the court, underneath, when it granted summary judgment in the defendant's favor, looked at these three incidents. It was aware of them. It wasn't confused about the facts surrounding them. The exhibits that are in front of you are in front of that court as well. But so is the case law. And this is where it gets important, because this issue can be a little confusing, and it can be easy to overgeneralize what the duty here is. In Illinois, and counsel, for the accountant's right, there's no dispute that this is a business-invite-to-relationship of this issue. But what the Illinois courts that have looked at this issue in similar circumstances have said is that prior reports of generalized crime just simply are not enough to create a duty. What has to be present is a report of some kind of prior criminal history that puts you on notice of the specific incident that is at issue. And so the reason that that's important is because what these prior incidents have to tell us is that it is not only reasonable to conclude, but it's objectively reasonable to expect. That's the language that's used. Objectively reasonable to expect that the specific incident would occur at the time and place that it occurred. And so what the courts have said is we're looking at the specific risk involved, and not whether or not crime happens. In fact, in the Samir case that was mentioned by counsel for appellants, the court says anyone can foresee the commission of a crime virtually anywhere and at any time. And so the fact that there had been crime somewhere is categorically insufficient to establish an ongoing continuous duty. So what we have here are sets of cases that we can look at and see where the courts have held, okay, well, that puts the business owner on notice that there's likelihood for this potential incident to occur. And we have other cases where there are allegations of similar crimes like we have here, and the courts have said, no, that is insufficient. So what plaintiffs want to do in this case is create a broad, ongoing, never-ending duty on the part of the business owner that if there is a commission of a crime on that property, there's a never-ending, ongoing, continuous duty then to prevent and protect from any similar crimes ever occurring on that property. The courts in the cases that have been cited just don't back that up. And I'd like to just kind of go through. There's four that are really discussed by plaintiff in support of the plaintiff's position. And if you look at each four of these cases, it's clear why they are distinguishable from this case. The first one is the Vaughn v. Granite City Steel case. This case is important because Appellant has pointed out or made the argument that this court determined that lesser crimes than the one that's committed, so for instance, property crimes, could be sufficient to put a landowner on notice of increased or more dangerous crimes. That was not publicly known of the court in Vaughn, however. In Vaughn v. Granite City Steel, the court very specifically decided that there was a contract, a labor agreement between the employer and the employees, one of which was involved in the, was the plaintiff in this case, and a company manual that further laid out what the employer's obligations to its employees under their labor agreement was. And the court decided that because of that agreement, there was a voluntarily assumed duty to provide security or protect against other crimes. It looked at past crimes solely for proximate cause issue. So that case is not on point as to whether a business owner or a landowner owes a duty to protect against crimes because of other prior crimes or even other prior lesser crimes. What that says is that when there's an agreement beforehand, you can assume the duty under land law. That's true in any area of negligence. Second, there's a short offer, Hawkeye's Bar and Grill case. And in that case, the tavern owner, there was a fight that lasted 15 minutes inside the bar, and a plaintiff was involved. The tavern owner kicked everyone in the fight out into the parking lot, understood that there was still dispute and an ongoing altercation going on in the parking lot, and physically removed the plaintiff into that situation. So this was a very specific risk. The court didn't decide, well, there's been other fights at this bar, so therefore you're on notice and you have a duty to prevent injuries from other fights in the future. The court said there was an ongoing fight, you moved into an area, and then you put the plaintiff who you knew was at risk specifically into that situation. So yeah, there's a duty that arises there. It's reasonably foreseeable. You can objectively reasonably expect there to be some injury to the plaintiff in that situation. In Doncavage v. Allen, this and the Struggling for Chicago Housing Authority cases, these are both landlord-tenant cases. And in both of these cases, the courts decided that there was some physical condition to the land itself that created the risk, and that was what gave rise to a duty on the part of the landowner. In the Shortall case, it was an unsecured ladder that gave access to an unlockable window that was specifically used for that purpose in a burglary. The landlord knew about it, and then the suit that came out of it was for another burglary with the exact same set of facts. So the burglar even testified that, yeah, I saw this unsecured ladder. It had access to this unlockable window. That's why I picked this place to burglarize. And the court said, well, the landowner had control over this dilapidated condition. It understood the risk because the exact same set of facts had already occurred. And it had control over that risk, and so therefore it had a duty to take steps within its control to mitigate that risk. Same thing in Struggling. In that case, there was, against the Chicago Housing Authority, there was an unsecured vacant apartment next to the plaintiff's apartment. That vacant apartment, there was no steps taken to secure it, so people had been kind of moving in and out, living there even though they weren't supposed to. And that vacant apartment had been used to rob the adjoining apartment where plaintiff resided. It happened again. So in the intervening between the two incidents, the landlord found out about the first incident, knew that the risk arose because there was this unsecured vacant apartment that gave access to burglars and to plaintiff's apartment, and still did nothing. So the court held that the landowner was, or the landlord in this case, had a duty to prevent that from occurring in the second situation, not in the first situation. None of these cases involved. There was a prior crime that was similar to this one. Therefore, there's an ongoing duty of the landowner to protect against any similar events. In each of these cases, there is a very specific threat that the landowner has some control over and can do something about to prevent the exact same set of things happening again in the future. And so that's where the courts have kind of drawn the line, where you have a landowner with some control over a particular risk that is foreseeable. Then there's a duty imposed, not a generalized risk to some general threats of crime in the future. But some of your cases, the courts already pointed out, that's just not enough. Now, if you look at the cases that the appellees have cited in their support, there's a number of cases that line up with this case, and the courts, the appellate courts in those decisions have decided that those facts were not sufficient to create a duty. First one is Rogers v. Hook Super X. That's a CVS case in which there were apparently two people inside a store who were acting suspicious and later on it came out that they mugged a plaintiff in the parking lot. She was in the store, left to go out to her car, was mugged by these two individuals. There was evidence in that case of prior purse snatchings at the store, similar to this one. The court, however, decided that wasn't enough to put the store on notice that there was going to be this specific mugging at this time. It's different than these cases where there's an unsecured ladder to an unlockable window. The landlord can go ahead and take care of that. He's aware because there have been prior instances using that risk to create or to go ahead and perform the crime. Not the case in CVS, in this CVS case. In this case, there was just kind of a generalized claim that there was other purse snatchings. You've got to be aware, and therefore, you have an ongoing duty to prevent purse snatchings or muggings. And the court said, no, that's not sufficient. There's not a significant closeness or tie between the alleged risk and the subsequent incident. And there's several. Hopper's Cash Station is a case in which there were lawsuits against ATM manufacturers because there were crimes or muggings on ATM users across the country, including one in Chicago where the lawsuit was filed. And because there was an inherent nature of threat to ATM cash withdrawals. The court said, no, that is not sufficient. Just because there's been a prior mugging in Chicago and 1,500 to 5,000 criminal attacks nationwide on these ATM customers, that's not enough. It's not enough to say, well, of course you can assume that there are going to be future crimes. But that's not enough to put you on notice that any particular mugging at an ATM is going to be or that you have a duty to prevent. Petrowski's v. Wexenthaler Realty Management. This one, there was a landlord who had a building. It was evidence that this was a high-crime area, and a person across the street had just been recently shot. The court decided that was insufficient to put the landlord on notice that there would be a rape attempt. Obviously, these were very serious crimes. The landlord knew about the violent crimes, but it wasn't enough to put the landlord on notice of future violent crimes at the property. The Kolodziejk case, and I'm sure that I'm butchering that name, but it's v. Melton, Simon & Associates. This was at a mall-type area, a shopping center. And in this case, there were prior reports like we have here of retail theft, armed robbery, strong-armed robbery, threatening of a corporate security guard with an oil stick on the property, an automobile theft, a youth that was seen carrying a dagger, two juveniles fighting in front of the parking lot, a drunk man yelling, and gang signs that were defeated and written across the property on the shopping center property. And the court said, despite all of this, it's not enough to put the store on notice that there was a specific risk to a shooting of a woman on the property by a gang member. There has to be more to give you notice that this specific incident is going to occur, not just that other generalized incidents have occurred or that you have a notice of generalized incidents occurring in the future. And so when you compare these cases to the ones that show that there is a duty on the landowner, it becomes clear that it is just not enough to say, look, there were three purse snatchings on this property, none of them occurring within a year of this particular incident. But because there were purse snatchings, Walmart, now you are on notice, and by the way, every other business owner in the area, you're on notice that there were these purse snatchings, and therefore you are going to be liable for any future purse snatchings or attacks on customers in the parking lot going forward. That is just an intolerable burden that no individual or entity could prevent. And there is no case law that has been – or no court in Illinois, according to the cases that have been cited by both parties, that has been willing to go that far in implementing a duty on a business owner. I think that if the court looks at the cases that have been cited, it sets out kind of clear guidelines, and the guideline is there has to be some closeness, some tie between specific risk involved, in this case a purse snatching. There is no allegation that there is something about the property itself that makes purse snatchings more likely or that Walmart knew about or that there was some other specific risk that Walmart had control over and could have taken steps to remedy that led to this crime. All we have here are generalized allegations of crime. There is no indication that any of the persons involved in any of the other 18 incidents were involved here. There is no indication that Walmart had any reason to believe that this purse snatching would occur on its parking lot at this time, assuming it occurred as Plankton pledged. And so with the lack of evidence, the court, Judge Barberis, underneath in Madison County, correctly decided that the defendants in this case did not owe a duty to prevent this particular incident as alleged by Plankton. I think that the case file backs up Judge Barberis' decision. And unless there's questions that you all would like to ask, I will rest it there. Thank you. Rebuttal. Thank you. I think I'd first like to take issue with Appellee's statement regarding the extent of what Appellant has asked for in this case. And for Appellee to say that every other business owner is now on notice, I mean, there's never been an assertion here that Appellant is claiming because of criminal activities that specifically occurred in a time frame, in a specific location, that now every other business owner is on notice. That assertion has never been made, and that's not what the purpose of Appellant's appeal is here in this matter. And that simply takes this statement too far. I also would ask the Court to take a further look at the Vaughn and Roe cases. I think Appellee incorrectly states the ultimate holdings of Vaughn, and members of this Court are very aware of what the holdings of Vaughn in particular was. While there was a discussion about contractual relationships that arose out of labor agreements that existed in the Granite City Steel facility, there also was a separate discussion about the Roe case. The Illinois Supreme Court case, which specifically the Court quote says, along with additional information that a previous incidence of criminal activity on landowner's property, we could consider whether criminal actions were foreseeable as a matter of law, which is our duty question here, the foreseeability as a matter of law. That's specifically what the Roe court stated. The Vaughn case then took the Roe case to say that relying on Roe, we believe the previous reports of criminal activity were admissible to prove notice on the part of the defendant. So that's the particular portion of Vaughn that we are focused upon, not the discussion regarding where the relationship or contractual duty may have arisen separately with respect to the underlying union contract. Additionally, while our colleague has asked the Court to look at the Shortall decision with regard to taverns, I would ask that the Court also consider the Osborne v. Stages Music Hall case arising out of the First District that happened after Shortall. Particular quote from the Osborne case is that, since foreseeability is measured by the individual facts and circumstances of each case, we look to the facts of this case to decide whether Stages owed a duty. And there the Court actually extended the duty to say that we decline to hold that a duty to patron stops at the door of a premises and could go out onto a sidewalk in particular circumstances, which again was very different than the Shortall situation that the Court was comparing to. But wasn't that case one of those tavern cases where you had the situation where bouncers knew the conduct of particular individuals, kicked them out, and they injured someone outside? In the Osborne case, yes, Your Honor, you are very correct that there they did look as to the reasonable foreseeability analysis to extend it outside the doors because of the fact that they found that the particular bouncers had an indication prior to it arising. But there they went so far as to say that they could extend it onto a public sidewalk that the nightclub no longer had control of. And so my purpose for addressing that and asking the Court to consider it in the varying circumstances is that there are individual circumstances that can influence where in one circumstance the Court may find, no, it's not reasonably foreseeable, or we're not going to place that burden. But in others we may. And it is appellant's position that here it's appropriate, given the totality of the circumstances when this occurred, the individual circumstances at Christmas Eve, that while this duty may not be extended on other days of the week or in other circumstances, that it may be appropriate to extend this duty here. Particularly while appellants have stated that the prior criminal acts don't occur during the holiday season, I'm sorry, appellee indicated that there was no evidence that the defendants would have known about this. Well, the defendant's own testimony said that they take all of these steps to increase security, add additional security personnel, because criminal activity increases during the Christmas holiday season. I mean, that came from the defendant's own testimony of their store manager and asset protection manager. I'd also like to ask the Court here to consider that I don't think that you can take defendant's, it seems to be, argument that reports of crime aren't enough notice that you have to ultimately see what happened in the case somehow. I'm not very clear about how that would come into a notice question, because the reports were what were relevant. I failed to highlight earlier that, in fact, the members of the Walmart staff were involved in some of those reports. The Court will see that we've highlighted that in our brief, that at different times, employees helped pull security footage or assisted, apparently, in the investigation or prosecution of these claims. So, again, that goes to that element of notice. I see that my time has concluded. Thank you. Can you finish your point? I was just going to say that, and thank you, I appreciate that, Your Honor, that this question of a very specific incident, I think, again, is the crux of why this has been taken too narrow of a view. Here, the question is reasonable foreseeability, not the notice of the specific, exact incident. I mean, obviously, if we could have notice of every specific incident to the future, that would be a different standard. But, here, the question is simply reasonable foreseeability. At the level of a duty analysis, was there enough evidence there to create a duty? Thank you. Thank you, Counsel. The Court will take a matter under advisement and issue a notification to the Court. All rise.